**In re Lynda M. BOOTH, Debtor.**

**Lynda M. Booth, Plaintiff,**

**v.**

**U.S. Department of Education, Washington Student Loan Finance Association, Acs, Inc., and Educational Credit Management Corporation, as a substituted party, Defendants.**

**Bankruptcy No. 08–03493–PCW7.**
**Adversary No. 08–80130–PCW.**

United States Bankruptcy Court,
E.D. Washington.

Aug. 31, 2009.

David P. Gardner, Winston & Cashatt, Spokane, WA, for Debtor.

Rolf Tangvald, Rolf Tangvald, United States Attorney's Office, Spokane, WA, for U.S. Department of Education.

Washington Student Loan Finance Association, Washington, DC, pro se.

ACS Inc., Dallas, TX, pro se.

Andrew J. Liese, Michaelanne Ehrenberg, Karr Tuttle Campbell, Seattle, WA, for Educational Credit Management Corporation.

MEMORANDUM DECISION RE: UNITED STATES OF AMERICA'S MOTION FOR SUMMARY JUDGMENT

PATRICIA C. WILLIAMS, Bankruptcy Judge.

THIS MATTER came before the Court on Defendants' Joint Motion for Summary Judgment seeking a finding that, as a matter of law, plaintiff/debtor's student loans are not dischargeable under 11 U.S.C. § 523(a)(8). All parties stipulate that the material facts are uncontested for the purpose of this motion.

Debtor commenced this adversary proceeding on November 21, 2008, seeking a discharge of her student loan obligations held by the U.S. Department of Education and by Educational Credit Management Corporation. As of 2008, she owed $160,606.42. Prior to commencing her Chapter 7, the debtor had participated in the Income Contingent Repayment Loan Program (ICRP). The defendants

filed a Motion for Summary Judgment in the adversary proceeding seeking a determination that if participation in the ICRP results in a zero dollars per month repayment schedule, as a matter of law, undue hardship as required by 11 U.S.C. § 523(a)(8) does not exist.

## FACTS

With the utilization of student loans, the plaintiff attended Eastern Washington University from the fall of 1985 through the summer of 1990 and obtained a Bachelors degree in Sociology with a minor in Spanish. Her degree resulted in full time employment. She again utilized student loans to enroll in a Masters program between 1994 and 1996, at which time her studies were disrupted. She again enrolled in the Masters degree program between 2003 and 2004, but did not complete the program. The debtor is currently 45 years of age and employed part time utilizing her degree in Sociology with net income of $927.23 per month. The reasons for the failure to complete the Masters program and the less than full time employment are not germane to the current motion. In this situation, interest on the obligation accrues at a greater monthly rate than the debtor's monthly income of $927.23. The last payment debtor made on her student loans was in March, 2003, and since acceptance in the ICRP, her monthly payment has been zero dollars.

## ISSUE

Since the debtor's participation in the ICRP results in no current requirement to make a monthly payment, is the debtor precluded from demonstrating that, based upon current income and expenses, she cannot maintain a minimal standard of living if forced to repay the loan?

## DISCUSSION

11 U.S.C. § 523(a)(8) exempts student loan obligations from discharge "... unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents ..."

■ The Ninth Circuit has adopted the Brunner test to determine whether undue hardship exists.

An educational loan is dischargeable in bankruptcy if 'excepting such debt from discharge ... will impose an undue hardship on the debtor and the debtor's dependents.' 11 U.S.C. § 523(a)(8); Rifino v. United States (In re Rifino), 245 F.3d 1083, 1087 (9th Cir.2001). To determine if excepting student debt from discharge will impose an undue hardship, we apply the three-part test first enunciated by the Second Circuit in Brunner v. New York State Higher Education Services Corp. (In re Brunner), 831 F.2d 395, 396 (2d Cir.1987). United Student Aid Funds, Inc. v. Pena (In re Pena), 155 F.3d 1108, 1112 (9th Cir. 1998). Under the Brunner test, the debtor must prove: (1) that she cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans. Id. at 1111; In re Brunner, 831 F.2d at 396.

In re Saxman, 325 F.3d 1168, 1172–1173 (9th Cir.2003).

■ The debtor bears the burden of persuasion as to each prong of the Brunner test. Rifino, supra; In re Carnduff, 367 B.R. 120 (9th Cir.BAP2007).

The Motion for Summary Judgment relates only to the first prong of the *Brunner* test. The parties have agreed that consideration of the second and third prongs of the test, including the relationship between participation in ICRP and those prongs, is not now at issue. The *Brunner* court did not consider a borrower's opportunity to participate in any student loan deferral program when it first articulated the test to determine undue hardship. Defendants argue that the first prong of the *Brunner* test cannot be met if a debtor's participation in the ICRP results in a zero monthly payment on student loans.

To decide the issue, a comparison must be made between the relief granted debtors under the Bankruptcy Code and the relief allowed under the ICRP. It is also necessary to compare the requirements imposed to obtain the appropriate relief.

### RELIEF UNDER 11 U.S.C. § 523(a)(8)

■ The Bankruptcy Code focuses on repayment and discharge of debt. The Code provides for a discharge which relieves that debtor from any further personal liability for the obligation. As the obligation is extinguished, no action can be taken to collect or realize upon the discharged debt. 11 U.S.C. § 524. The granting of a discharge is effective immediately upon the entry of an order of discharge, typically 62 days after the date of the originally scheduled first meeting of creditors. 11 U.S.C. § 727. The granting of the discharge is the fundamental building block of the goal of providing honest, but unfortunate, debtors with a fresh start. The relief provided under § 523(a)(8), assuming undue hardship is proven, allows a person immediately after discharge to manage their financial lives without the burden of a student loan obligation. It may also result in a debtor receiving a "partial discharge," i.e., some portion of a student loan obligation may be discharged with a continuing duty to repay the non-discharged portion. *Saxman, supra.*

### RELIEF UNDER ICRP

The relief provided under ICRP differs greatly from the relief provided by § 528(a)(8). The ICRP is an administrative regulation of the Department of Education found at 34 C.F.R. § 685.209 and adopted under the authority of 20 U.S.C. § 1087e (d)-(e) (2000). Simplistically, the ICRP requires a borrower to repay under one of two options. The first option is repayment based upon a 12 year amortization derived by application of an annually adjusted percentage of the debtor's adjusted gross income. The second option is repayment of the amount of 20% of debtor's annually adjusted discretionary income, which is defined as adjusted gross income less applicable federal poverty level guidelines. 34 C.F.R. § 685.209(a)(2), (3), (6). If the borrower is unable to fully repay the loans on either basis, the repayment period is extended to a maximum of 25 years. During the repayment period, the obligation continues to exist. The debtor would have to list the obligation on a credit application or financial statement. It would appear on the debtor's credit report. During the repayment period, interest continues to accrue on the obligation and the debtor is required to annually report income to ICRP. 34 C.F.R. § 685.209(a)(5), (7) and (b)(7).

Application of the ICRP does not result in a discharge of the debt nor relieve the debtor from personal liability on the debt. Further action may, and will, be taken to collect the obligation, even if that action is simply requiring the debtor to provide annual financial information to the Department of Education. The ICRP does not grant a discharge, but lapse of a period as long as 25 years may result in cancellation

or forgiveness of the debt. There is no provision in the regulation for "partial" cancellation or forgiveness of the obligation. Unlike a discharge, cancellation or forgiveness of a debt results in a tax liability. As interest accrues during the 25 years or lesser repayment period, the amount of debt cancelled will be quite large. The resulting tax liability would not be subject to discharge in a later bankruptcy proceeding.

The focus of the ICRP is on deferral, not discharge, of debt. This is the antithesis of a fresh start. Congress has provided bankruptcy debtors relief which is not provided in the ICRP regulations.[1] Compliance with ICRP regulations will not result in the same relief which can be granted by the courts under 11 U.S.C. § 523(a)(8).

### THE STANDARDS FOR UNDUE HARDSHIP DIFFER FROM THE STANDARDS FOR COMPLIANCE WITH ICRP

Not only is the relief under the Bankruptcy Code different from the relief granted by the Department of Education, the standards used to assess whether the relief is appropriate also differ.

 Under the first prong of the *Brunner* test, the debtor must demonstrate that she cannot maintain a minimal standard of living at the present time if required to repay the loan. This burden requires more than a simple mathematical calculation of income minus expense. The court must consider whether it would be unconscionable to require the debtor to reduce expenses or acquire more income in order to make payments in an amount which would be reasonably sufficient to

service part or all of the obligation. *Carnduff, supra.* In reaching a conclusion as to whether undue hardship exists, the court considers the reasonableness or necessity of all expenses including private school tuition for children, the type of vehicle driven by the debtor and payment required for it, and personal expenses such as clothing and tanning salons. *Rifino, supra.* Comparisons are made with expenses allowed under Chapter 13 Trustee guidelines for debtor's expenses as well as IRS guidelines. *In re Cota,* 298 B.R. 408 (Bankr.D.Ariz.2003). As to the income side of the equation, bankruptcy courts do not just compare a debtor's household income to federal poverty level guidelines. Rather, bankruptcy courts consider, in both the first and third prong of the *Brunner* test, whether the debtor historically has maximized, or in the future will be able to maximize income. *In re Geyer,* 344 B.R. 129 (S.D.Cal.2006); *In re Birrane,* 287 B.R. 490 (9th Cir.BAP2002); *In re Nascimento,* 241 B.R. 440 (9th Cir. BAP1999). Undue hardship under the Bankruptcy Code is determined at the time of hearing based upon the evidence which then exists and that determination is final.

Unlike undue hardship which requires a case-by-case analysis, application of ICRP is determined by a formula. Application of ICRP is an administrative procedure subject to the administrative rule-making process. Calculations under the formula, such as percentage of adjusted gross income, may change on an annual basis. Application of ICRP and the determination of the appropriate monthly payment repeats on an annual basis for as long as 25 years. In contrast with the Bankruptcy

---

1. A discharge of certain student loans can be granted by the Department of Education if specific conditions are met. For example, 34 C.F.R. § 674.33(g) discharges a Perkins student loan if the school closes while the student was enrolled or within 90 days of the student's withdrawal from the school.

Code's determination of an ability to repay, the formulaic administrative process does not consider the reasonableness of a debtor's expenses nor the ability to maximize income. Thus, issues required to be addressed under the first prong of the *Brunner* test, are not considered in the administrative process.

### ICRP SHOULD NOT OPERATE TO REPEAL 11 U.S.C. § 523(a)(8)

█ A debtor's participation in ICRP is relevant to much of the analysis conducted by a bankruptcy court to determine if undue hardship exists. However, this current motion is limited to determining as a matter of law, if a zero monthly payment plan under ICRP prevents a debtor from demonstrating an inability, based on current circumstances, to repay a student loan obligation. Granting this motion would replace a court's conclusion regarding permanent relief from the underlying obligation with an administrative agency conclusion that repayment of a debt should be deferred. Terrence L. Michael & Janie M. Phelps, *Judges?!—We Don't Need No Stinking Judges!!!: The Discharge of Student Loans In Bankruptcy Cases And The Income Contingent Repayment Plan,* 38 TEX. TECH L.REV. 73 (2005).

Holding that an administrative decision to temporarily defer monthly repayments precludes application of the statutory undue hardship standards usurps the Bankruptcy Code. It destroys the jurisdiction of the bankruptcy court and would not allow any exercise of discretion by a bankruptcy judge. Granting the defendants' motion would effectively replace a statutory case-by-case analysis potentially relieving a debtor from liability with an administrative formula which potentially defers liability.

### CONCLUSION

ICRP undoubtedly provides benefit to borrowers who do not qualify or do not desire to commence a bankruptcy proceeding. Once a bankruptcy proceeding is commenced, the debtor's financial situation must be analyzed in accordance with the Code and the entitlement to a fresh start must be determined by application of the Code. 11 U.S.C. § 523(a)(8) establishes the relief available to debtors and the considerations for granting that relief as it relates to student loans. Should public policy require the replacement of the relief set forth in § 523(a)(8) with participation in the ICRP, it is for Congress to express that public policy by amending § 523(a)(8).

Accordingly, defendants' Motion for Summary Judgment is **DENIED**.